NOT DESIGNATED FOR PUBLICATION

No. 114,059

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of G.R.K.,
a Minor Child Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANK J. YEOMAN, JR., judge. Opinion filed November 13, 2015. Affirmed.

*Rachel I. Hockenbarger*, of Topeka, for appellant natural mother.

*Austin K. Vincent*, of Topeka, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

*Per Curiam*:  When the stepmother of G.R.K. sought to adopt him, the district court ruled that D.K., the boy's mother, did not have to consent. The court granted the adoption, ruling that Mother had failed to fulfill her role as a parent for 2 years next preceding the filing of the petition. In the court's view, under the law, her consent was not needed and terminated her parental rights. Mother appeals, arguing that because she was under no court order to pay any support the court should not hold it against her. Unpersuaded by this argument, we affirm the adoption.

G.R.K. was born in Virginia in March 2001. Mother and J.H., the father of G.R.K., were married. All three lived together during the first year of G.R.K.'s life. Mother described her relationship with Father as "abusive and scary." In May 2002,

1

Father married C.H. (Stepmother) and moved to Kansas with her. Mother later had her marriage to Father annulled.

Mother testified that G.R.K. always knew who his father was. G.R.K., however, testified that he first learned of Father in 2010. That timeframe was important because it coincided with the filing of a child welfare action in Virginia involving Mother and G.R.K. That court action began when concerns arose regarding Mother's improper use and abuse of prescription drugs. G.R.K. had not been going to school, and Mother was allegedly moving G.R.K. from school to school. In March 2010, the court removed the boy from Mother's home and placed sole temporary legal and physical custody with Father. The court permitted Father to take his son to Kansas. The court granted visitation rights in Kansas to Mother. The Virginia court also ordered that maternal grandmother receive "reasonable phone contact" with G.R.K. Reports of Mother's physical neglect of the boy were substantiated in January 2011.

In November 2014, Stepmother filed a petition for stepparent adoption and a motion to terminate Mother's parental rights. In the motion, Stepmother claimed that Mother had not performed parental duties for the 2 years preceding the filing of the motion. Both Father and G.R.K. himself consented to the adoption.

The district court took testimony on the issues. After considering the evidence, the district court found that Mother provided no financial assistance for G.R.K. despite, at times, having the resources to do so. In addition to the lack of financial assistance, the district court noted that Mother's incarceration meant that she was unable to maintain the parent-child relationship. After making these findings, the district court ruled that clear and convincing evidence proved that Mother failed to assume parental duties for the 2 years preceding the filing of the petition for adoption. Accordingly, the court granted the petition.

On appeal, Mother's primary argument is that the district court erred when it applied the judicial presumption that she failed to assume parental duties because she failed to provide child support. Mother contends that this presumption cannot apply in this case because there was never any judicially decreed child support obligation entered for Mother.

A district court's findings under K.S.A. 2014 Supp. 59-2136(d) that a parent has refused or failed to assume parental duties for 2 years prior to the filing of the petition for stepparent adoption is a finding of fact that will be reviewed on appeal to determine if it is supported by substantial competent evidence. *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011). "Substantial evidence" refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In determining whether the parent's efforts amount to an assumption of parental duties, the court must examine all surrounding circumstances. *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010).

K.S.A. 2014 Supp. 59-2136(d) provides the mechanism for a stepparent adoption. In the absence of the consent of the noncustodial parent, the moving party must prove that the noncustodial parent has "failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent." Although the statute is written with the assumption that the noncustodial parent is the father, K.S.A. 2014 Supp. 59-2136(b) explains that the statute applies equally to mothers.

K.S.A. 2014 Sup. 59-2136(d) goes on to provide a rebuttable presumption of failure to assume parental duties if the noncustodial parent has "knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition

3

for adoption." Mother's argument on appeal centers on the fact that there was never a judicially decreed child support order entered for Mother.

There never was a judicially decreed child support order in place for Mother. Father testified that he worked closely with child support enforcement officials in Kansas but that they were unable to locate Mother and consequently could not serve her with an order.

We do not think the statutory presumption comes into play here. The record on appeal bears no hint that the district court even tried to apply the rebuttable presumption to the facts of this case.

The court noted that Mother acknowledged her failure to provide financial support for G.R.K. But the district court very clearly noted that it was applying the "'common-law duty to support'" that is recognized by both Kansas and Virginia courts. There is no mention anywhere in the record on appeal of the rebuttable presumption of failure to parent. Mother's argument regarding the district court's improper application of the presumption is either a misunderstanding of the district court's ruling or an attempt to deflect from the facts of the case. If the court did not use the presumption, we certainly cannot rule that it erred in using it as Mother asks us to do.

Mother does go beyond the rebuttable presumption to argue the common law financial obligation that was referenced by the district court. She claims that her failure to financially support G.R.K. was due to her lack of finances, which was caused by her incarceration and unemployment.

In *J.M.D.*, the Kansas Supreme Court reiterated that even if the statutory presumption of failure to parent is not in effect, a parent still has a duty to support his or her child to the extent to which the parent is financially able. 293 Kan. at 173. The

4

Kansas Supreme Court rejected as insufficient to show parenting a father's "incidental and insufficient" child support payments. 293 Kan. at 173.

Mother testified that she was employed from August through December 2012. She admitted that she did not send any money to G.R.K., even when she was earning income, because there was no support order in place. After December 2012, Mother found it difficult to work because of the amount of time she had to contribute to her "daily groups and classes." In addition, Mother was incarcerated beginning in March 2014.

It is plausible that Mother's felony probation conditions and her subsequent incarceration made it difficult for her to earn income. Nevertheless, December 2012 fell within the 2-year period considered by K.S.A. 59-2136(d). Clearly, Mother was employed and had the resources to send financial support for G.R.K during that time. Therefore, it appears that the district court properly considered Mother's lack of financial support when ruling on the petition for stepparent adoption.

Our analysis does not end, however, at a consideration of Mother's financial contributions. Rather, we consider "'all surrounding circumstances'" when reviewing a stepparent adoption. See *J.M.D.*, 293 Kan. at 167. This includes considerations of G.R.K.'s best interests and Mother's fitness, as allowed by K.S.A. 2014 Supp. 59-2136(d). When considering whether a noncustodial parent has assumed parental duties, the "parental duty" involved is to "provide for and nurture the children's mental and emotional health." *J.M.D.*, 293 Kan. at 173.

Mother testified that G.R.K. "always knew" that Father was his biological father. Father testified that he attempted to find G.R.K. but could not because Mother was attempting to conceal his location. When Father went to Virginia after the child abuse action was filed, personnel at the school told Father that Mother had reported him as deceased. G.R.K. confirmed that he did not learn of Father's existence until 2010.

5

Mother testified that her drug addiction kept her away from G.R.K. for a time. However, she told the district court that she tried to send "multitudes" of letters to G.R.K. but that they were returned to her as undeliverable. This caused Mother to believe that Father and Stepmother moved. Father testified that he has been at the same address since before March 2010. Father acknowledged that Mother wrote several letters to G.R.K. after the filing of the petition for stepparent adoption. One letter, dated November 16, 2014, begins: "It has been a very long time but by God's grace I hope this letter reaches you."

Mother also believed that Father and Stepmother changed their telephone number in August 2012. Father acknowledged that there were number changes for both the cell phone and landline beginning in 2013. Father blamed the change of his cell phone number on repeated, abusive phone calls from Grandmother. But Father testified that Mother did not call G.R.K. between November 2012 and November 2014. Stepmother testified that Mother called G.R.K. two times in 3 years. G.R.K. was always given the choice about whether to speak to Mother on the telephone.

Mother testified that she did not understand why there was a finding that she neglected G.R.K. She claimed that G.R.K. was "never abused." Father testified that he first learned that something was amiss when he received a telephone call that G.R.K. was being abused and neglected and "needed rescue." It was Father's understanding that G.R.K. was roaming the neighborhood, knocking on doors and looking for food. When G.R.K. first went to live with Father, he asked when they would have to go on "night errands." G.R.K. testified that he remembered Mother doing drugs in front of him and taking him on trips to buy and sell drugs.

G.R.K. was 14 years old at the time of the hearing on the petition. He asked that Stepmother be allowed to adopt him. He testified that when he lived with Mother, he "didn't have a loving caring family and my mother had not had concern for me in any

6

way." G.R.K. described Stepmother as acting in the "best mother role that she could" while treating him with "love and respect."

The evidence shows that Mother largely abandoned her parental role for a period of years. Both Father and Stepmother testified that Mother went long stretches of time without calling or writing G.R.K. In addition, G.R.K. testified that he did not have warm memories of Mother and that he wanted Stepmother to be his legal parent.

There was conflicting testimony given regarding the frequency of Mother's attempts to contact G.R.K. and about G.R.K.'s knowledge of Father's existence. To this end, the district court made findings about the credibility of certain testimony and about the fact that some of Mother's claims were not supported by substantial evidence. To the extent that the district court made findings about the credibility of certain witnesses, those findings will not be revisited by this court. See *Becker v. Knoll*, 301 Kan. 274, 276, 343 P.3d 69 (2015).

In the final analysis, the evidence presented at the hearing plainly proves that Mother abandoned her parental duties for the 2-year period preceding Stepmother's petition for adoption. Because the evidence supports the adoption and the concurrent termination of Mother's parental rights, we affirm the ruling of the district court.

Affirmed.