NOT DESIGNATED FOR PUBLICATION

No. 128,761

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of J.L.H.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Submitted without oral argument. Opinion filed May 1, 2026. Affirmed.

*Richard A. Pinaire*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellant natural father.

*Wade M. Carter*, of CAD Law, LC, of Salina, for appellee stepfather.

Before WARNER, C.J., MALONE and HILL, JJ.

WARNER, C.J.: This appeal challenges the district court's grant of a stepfather's adoption over the natural father's objection. After a trial, the court found that the father had "failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing" of the adoption petition. K.S.A. 59-2136(h)(1)(G). The father argues on appeal that he presented evidence that should have persuaded the court to reach a different result. But unlike district courts in adoption cases, appellate courts are not finders of fact; we do not reweigh evidence or reassess the credibility of witnesses.

After carefully reviewing the record and the parties' arguments, we conclude that there was evidence presented at trial to support the district court's decision. We therefore affirm the district court's judgment.

1

J.L.H., who we refer to using the pseudonym Jane, was born in December 2017. Jane's natural parents, who we generally call Mother and Father, were never married but lived together for a short time after Jane was born. Mother and Father separated in early 2018, and Mother filed a court action to determine parentage and set guidelines for parenting time and child support. Father was granted unsupervised time with Jane but was not allowed overnight parenting time and was ordered to pay child support.

Following the breakdown in their relationship, Mother sought and obtained multiple protection orders against Father between 2018 and 2020 based on her claims that Father had abused or stalked her or Jane. Father repeatedly defied these orders with his conduct. For example, in April 2019, Father refused to return Jane to Mother for nine days after a visit and took Jane to be forensically examined due to unfounded claims of child sexual abuse. After several violations of the parenting and protection orders, the court limited Father's contact with Jane and Mother to phone contact during certain hours in a March 2020 order. A court later terminated even that phone contact due to Father's noncompliance with the March 2020 order.

Father also struggled to consistently pay support to Mother and Jane. Between September 2018 and April 2020, Father amassed an outstanding debt of $1,112.83. Between April 2020 and April 2022, Father made 20 support payments, but his arrearage as of April 2022 was about $1,375. During this time, in September 2021, Father applied for increased disability payments on account of his status as a veteran and was granted 100% disability. Father did not disclose his disability award to Mother or the court.

Mother has since married Stepfather, and they live together with Jane. Stepfather filed the petition to adopt Jane, with Mother's consent, in April 2022. The petition alleged that Father failed to meaningfully contact Jane for two years before Stepfather filed the

petition, stating that Father had not visited the child since February 2020 and had "infrequent, incidental phone contact during the spring and summer of 2020" before all phone contact was stopped by Jane's case manager. The petition also alleged that Father "failed to support [Jane] since birth, has a substantial child support arrearage and fails to consistently pay support."

Father answered, stating that he did not consent to the adoption. He asserted that his ability to emotionally support Jane had been "hindered by [Mother's] efforts to ensure" that he had no contact with his daughter and that he financially supported Jane "by regularly paying court ordered child support" during the previous two years.

The district court conducted a four-day trial, hearing extensive testimonial evidence. After considering this evidence, the court granted the petition for adoption, finding that Father had failed to assume his parental duties to support Jane and meaningfully remain in contact with her during the two years before the adoption case.

In its decision, the court found that the financial support Father had provided over two years before the adoption case was lacking in several important respects. In particular, the court found that Father "missed several payments and provided minimal financial support," "failed to disclose his increased disability income," and "neglected his obligation to notify the court or mother of financial changes."

The court also found that Father had not otherwise provided meaningful support to Jane or maintained contact with her. It described Father's contact with Jane as sporadic, noting that it ended in July 2020, and found any efforts to maintain a relationship with Jane were insufficient and not sustained over the applicable period. The court explained that Father "repeatedly defied court orders, including absconding with the child and engaging in unauthorized contact with the mother" and violated "[p]rotective and parenting time orders . . . demonstrating an ongoing pattern of instability." The court

further observed that Father "took [Jane] for a forensic examination based on unfounded accusations of abuse, causing unnecessary trauma to the child," displaying a "lack of judgment and disregard for her well-being." And Father "failed to acknowledge his role in creating the very barriers to his parenting rights complained of and consistently blamed others for his own shortcomings."

The district court found that "[Jane] identifies [Stepfather] as her father and has no memory of [Father]." The court concluded that Stepfather had "been a consistent and positive influence, acting as a father figure to [Jane] since 2020," providing "financial and emotional stability."

The district court granted adoption without Father's consent. The court emphasized that terminating Father's rights and granting the adoption was in Jane's best interests because "[c]ontinued involvement from [Father] would pose a risk to the child's stability and well-being." The court added that Jane's guardian ad litem recommended termination of Father's parental rights and formalization of the adoption, despite Father's love for Jane, because of his "inability to act in her best interests demonstrated by his repeated violations of court orders, his irrational behavior, and his failure to fulfill parental duties." Father appeals.

DISCUSSION

"Parents who assume their parental responsibilities have fundamental due process rights protected by the United States and Kansas Constitutions to raise their child." *In re Adoption of E.R.K.*, 65 Kan. App. 2d 613, 617, 571 P.3d 76 (2025) (citing *In re Adoption of G.L.V.*, 286 Kan. 1034, 1060, 190 P.3d 245 [2008]). Thus, when a stepparent seeks to adopt a stepchild, both natural parents must consent to the adoption unless the district court finds one of the conditions within the Adoption and Relinquishment Act is met. K.S.A. 59-2136(h)(1); *In re E.R.K.*, 65 Kan. App. 2d at 617. While these statutes are

4

construed strictly in favor of maintaining the natural parent's rights, a parent's consent is not required when that parent failed to assume their parental duties for the two years before the petition. K.S.A. 59-2136(h)(1)(G); *In re E.R.K.*, 65 Kan. App. 2d at 617 (citing *In re Adoption of C.L.*, 308 Kan. 1268, Syl. ¶ 2, 1279-80, 427 P.3d 951 [2018]).

Under the Act, a court may terminate a person's parental rights and permit another to adopt a child without that parent's consent if the court finds by clear and convincing evidence that the parent meets one of seven enumerated conditions for termination. K.S.A. 59-2136(h)(1). One of the conditions permitting termination arises when a "father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition." K.S.A. 59-2136(h)(1)(G). Relevant here, the Act establishes a presumption that a father fails to assume the duties of a parent if the father has knowledge of the child's birth and knowingly fails to "provide a substantial portion of the child support as required by judicial decree" when able to do so. K.S.A. 59-2136(h)(3).

The Act defines "support" as "monetary or non-monetary assistance that is reflected in specific and significant acts and sustained over the applicable period." K.S.A. 59-2136(h)(4). When the district court makes a finding under this section, the court "[s]hall consider all of the relevant surrounding circumstances" and "may disregard incidental visitations, contacts, communications or contributions." K.S.A. 59-2136(h)(2)(A), (B).

When a district court terminates parental rights based on factual findings made under K.S.A. 59-2136(h)(1), appellate courts review those factual findings to determine whether, after viewing all the evidence in the light most favorable to the prevailing party, the findings were supported by clear and convincing evidence. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021). Evidence is sufficient to meet this standard when it demonstrates that the truth of

the facts asserted is highly probable. In making this determination, an appellate court will "not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *In re Baby Girl G.*, 311 Kan. at 806.

The issue in this case is thus whether "this court is convinced, after viewing all the evidence in the most favorable light to Stepfather, that a rational factfinder could have found it highly probable that Father failed to assume his parental duties for the two years before Stepfather's adoption petition." *In re E.R.K.*, 65 Kan. App. 2d at 619. Father argues that the court erred because the evidence shows that he made 20 consistent payments of child support between April 2020 and March 2022. He also argues that the evidence showed contact between Father and Mother between April 2019 and July 2020.

Kansas law recognizes a parent's responsibility to support their minor children in both financial and non-financial ways. From a financial standpoint, a parent has a duty to support their child "to the extent to which the parent is financially able." *In re Adoption of J.M.D.*, 293 Kan. 153, 173, 260 P.3d 1196 (2011); *In re E.R.K.*, 65 Kan. App. 2d at 621. That means that a parent has an affirmative obligation to disclose additional income that may be available to the child. For example, in *In re Adoption of J.M.D.*, the Kansas Supreme Court found that the father had a parental duty to financially support his child as much as he was able, which included an obligation to disclose veteran's benefit payments. 293 Kan. at 173. In *In re M.R.C.*, 42 Kan. App. 2d 772, 780, 217 P.3d 50 (2009), this court rejected a father's argument that a protection order prevented him from supporting the birth mother because he could not contact her during the pregnancy. We emphasized that the protection order only prevented communication; it did not prevent the father from supporting mother during the pregnancy. 42 Kan. App. 2d at 780.

As this court has observed, there are many ways that a parent may support the child without contacting them. These include, among other avenues, "providing for the child's needs while in the parent's care; or paying directly toward the child's school,

healthcare, sports, clothing, food, or other extracurricular activity expenses." *In re E.R.K.*, 65 Kan. App. 2d at 621.

Parental duties also include "non-financial support." 65 Kan. App. 2d at 619. Our Kansas appellate courts have found that K.S.A. 59-2136(h) "'recognizes that there are numerous duties associated with being a parent to a child, and all such duties—even though not explicitly enumerated—may be considered.'" 65 Kan. App. 2d at 619 (quoting *In re G.L.V.*, 286 Kan. at 1054) (listing examples of what may demonstrate the assumption of parental duties). A parent need not show that they excelled at or assumed "every aspect of parenting to demonstrate assumption of their parental duties." *In re E.R.K.*, 65 Kan. App. 2d at 620. But a parent must be able to prove that they engaged in more than "incidental visitations, contacts, communications or contributions." K.S.A. 59-2136(h)(2)(B). Parents have a duty to "provide for and nurture the children's mental and emotional health, rather than to simply make frequent contact with the children." *In re J.M.D.*, 293 Kan. at 173.

Viewing the evidence in the light most favorable to Stepfather, as our appellate role requires, we find there was evidence to support the district court's decision here. That is, there was evidence to support the court's conclusion that Father did not assume his parental responsibilities in the two years before the petition for adoption.

Turning first to Father's financial contributions, the evidence showed that between April 2020 and April 2022, Father missed four support payments—and five of the payments that Father made were less than the ordered amount. The district court concluded that by April 2022, Father owed roughly $1,375.00 in child support, and the record supports this finding. The district court concluded that Father's financial support was "minimal" and found that he failed his duty to inform Mother or the case manager about increased disability benefits available to Jane.

From a non-financial perspective, the district court found that Father failed to assume his duty to have meaningful contact with Jane between April 2020 and April 2022. The evidence showed that Father's contact and visitation privileges were suspended after he violated a court order by keeping Jane beyond his allowed time—for several days on multiple occasions. Father testified that he took those actions because he claimed that Jane was being neglected by Mother and sexually and physically abused by the company she kept; yet these claims were found to be unsubstantiated by the Kansas Department for Children and Families and law enforcement. But even though Father was unable to be physically present, supporting Jane was not impossible.

For example, when Jane was an infant, Father gave Mother a pack of diapers and a toy, and then in May 2020, he sent Jane a package of gifts and a framed photo, which Mother did not report as a violation of the court order. Thus, Father knew of avenues through which to support Jane without violating the court orders but did not take advantage of those opportunities except for one gift during the two-year timeframe. The district court heard testimony explaining that Father did not purchase Jane clothes and resisted a request to even pay to replace Jane's shoes that were lost at his house.

Father attempted to bolster his efforts to contact Jane by presenting evidence of communication between him and Mother on the messaging platform TalkingParents between April 2019 and July 2020. But all communication stopped after July 2020 due to Father's failure to comply with court orders. Father's occasional message communications and phone calls during spring of 2019 and summer of 2020 and the gift in May 2020 are examples of incidental support and do not undermine the soundness of the district court's decision. See *In re E.R.K.*, 65 Kan. App. 2d at 624 (calls and gifts may demonstrate love and affection for a child, but do not alone amount to evidence of assuming parental responsibilities).

Father argues that he loves Jane and he does not wish for his parental relationship to be terminated. Yet this reality does not change the fact that the district court's decision was based on the evidence presented and consistent with Kansas law.

The district court found that Stepfather had shown by clear and convincing evidence that Father had failed to meaningfully support Jane during the two years before the filing of this adoption case. This decision was supported by evidence at trial. The court did not err when it terminated Father's parental rights and granted Stepfather's adoption of Jane without Father's consent.

Affirmed.