No. 127,484

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of
E.R.K., a Minor Child.

SYLLABUS BY THE COURT

1.

Under the Adoption and Relinquishment Act, a district court may terminate a person's parental rights and permit a stepparent to adopt the child without that parent's consent when the court finds by clear and convincing evidence that the parent meets at least one of seven enumerated conditions for termination of parental rights in K.S.A. 2023 Supp. 59-2136(h)(1).

2.

Parents who have assumed parental duties have a fundamental right to the care, custody, and control of their child. A stepparent seeking to adopt a stepchild without one parent's consent carries the burden to prove by clear and convincing evidence that termination is appropriate under K.S.A. 2023 Supp. 59-2136.

3.

When reviewing a district court's termination of parental rights pursuant to the Adoption and Relinquishment Act, appellate courts review all the evidence in the most favorable light to the prevailing party to determine whether the district court's factual findings are supported by clear and convincing evidence, i.e., whether a rational factfinder could have found the determination highly probable.

1

4.

Upon a finding by clear and convincing evidence that a parent has failed or refused to assume their parental duties for two consecutive years immediately preceding the filing of an adoption petition, the district court may terminate that parent's parental rights under K.S.A. 2023 Supp. 59-2136(h)(1)(G).

5.

When determining whether a parent has failed or refused to assume their parental duties under K.S.A. 2023 Supp. 59-2136(h)(1)(G), the district court must consider all the surrounding circumstances. Examples of parental duties may include but are not limited to:  (1) financial support; (2) love and affection; (3) regular custody or visitation; (4) involvement in the child's education, extracurricular activities, religious activities, and healthcare; (5) communication with the child's other parent or guardian as appropriate or necessary; and (6) regular communication with the child. Considering all the relevant surrounding circumstances, a parent need not excel at or even undertake every aspect of parenting to demonstrate assumption of their parental duties.

6.

Assumption of parental duties requires some level of support, knowledge, attendance, decision-making, or responsibility.

Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Submitted without oral argument. Opinion filed May 9, 2025. Affirmed.

*Grant A. Brazill,* of Morris Laing Law Firm, of Wichita, for appellant.

*Megan S. Monsour,* of Hinkle Law Firm LLC, of Wichita, for appellee.

Before HURST, P.J., HILL and ARNOLD-BURGER, JJ.

2

HURST, J.: When a parent fails to assume their parental duties for two years—yet refuses to consent to a stepparent adoption—the district court may terminate the parent's rights and permit the adoption without the parent's consent. That is exactly what occurred here. Almost five years after marrying Mother and developing a relationship with and taking responsibility for his stepdaughter, E.R.K., Stepfather sought to adopt E.R.K. Through that adoption petition, Stepfather asserted that Father had failed to assume his parental duties for two years immediately preceding the adoption petition and, therefore, the court should terminate his parental rights.

In the two years preceding Stepfather's adoption petition, Father failed to provide monetary support for E.R.K., visit E.R.K. in person, involve himself with E.R.K.'s education, healthcare, or religious activities, or maintain regular, frequent contact with E.R.K. Considering all the surrounding circumstances, including E.R.K.'s age and the length of Father's absence from her life, Father's infrequent, irregular phone calls and gifts amounted to little more than incidental contact with his child and therefore did not constitute an assumption of his parental duties. The district court found that termination of Father's parental rights was appropriate for several reasons, but this court only needs one reason to affirm the district court's judgment.

The district court's termination of Father's parental rights for failing to assume his parental duties to E.R.K. for the two years preceding Stepfather's adoption petition under K.S.A. 2023 Supp. 59-2136(h)(1)(G) is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

D.K. (Father) and T.B. (Mother) were married and had E.R.K. but divorced in July 2014. Father relocated to Nevada in early 2016 when E.R.K. was about three and a half years old. Father and Mother had two older adopted children who later relocated to Nevada with Father. Mother was granted sole legal custody of E.R.K. in October 2017,

3

and Father's parenting time was limited to what Mother agreed was in E.R.K.'s best interests. The order granting Mother sole legal custody found "Father's role in [E.R.K.]'s life is minimal and sporadic, that he has essentially abandoned [E.R.K.], and that Father's communication and co-parenting efforts are insufficient and not in the best interest of [E.R.K.]."

In June 2018, Mother married E. B. (Stepfather). In April 2023, Stepfather filed a petition to adopt E.R.K. in which he asserted Father's parental rights should be terminated based on the following statutory factors: (1) Father abandoned or neglected E.R.K.; (2) Father was unfit as a parent; (3) Father had not made reasonable efforts to communicate with or support E.R.K.; and (4) Father failed or refused to assume the duties of a parent for two consecutive years preceding the filing of the adoption petition. Father objected to the petition, and the matter proceeded to a one-day trial in January 2024 at which Father, Mother, and Stepfather all testified.

At trial, the evidence established that Father did not visit E.R.K. in person for over seven years, from September 2015 to 2023. In 2023, he had a one-hour in-person visit with E.R.K. when he was in the state for a hearing in this litigation. Before Stepfather filed the adoption petition in April 2023, Father had not filed a motion to modify custody, parenting time, or reestablish child support. He also had not traveled to see E.R.K. or requested any in-person visitation or parenting time since September 2015. Additionally, Father failed to financially support E.R.K. for over two years before the adoption petition, despite having means to do so.

The district court ultimately terminated Father's parental rights to E.R.K. based on its following findings:

> "1. The Court finds that [Father] has failed or refused to assume the duties of a
> parent for two consecutive years immediately preceding the filing of this petition

4

pursuant to K.S.A. 59- 2136(h)(1)(G) by failing to pay anything towards the support of [E.R.K.] for two years other than small gifts given directly to [E.R.K.] and by failing to visit and communicate with [E.R.K.] when given the opportunity.

"2. The Court finds that [Father] made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth pursuant to K.S.A. 59-2136(h)(1)(C).

"3. The Court finds that [Father] abandoned or neglected the child after having knowledge of the child's birth pursuant to K.S.A. 59-2136(h)(1)(E).

"4. The Court finds that any amounts, gifts given to [E.R.K.] or contact did not meet the definition of support pursuant to K.S.A. 59-2136(h)(4), as such were not specific, significant, or sustained over the applicable period.

"5. The Court finds that what visitations, contacts, communications or contributions there were, were incidental and are disregarded.

"6. It is not in the child's best interest to deny this adoption.

"7. It is in the best interest of the child to allow the adoption to proceed.

"8. The Court does not find [Father] unfit pursuant to K.S.A. 59-2136(h)(1)(B).

"9. [Father]'s parental rights are terminated."

Father appealed.

## DISCUSSION

Under the Adoption and Relinquishment Act, the district court may terminate a person's parental rights and permit a third party to adopt their child without that parent's consent when the court finds by clear and convincing evidence that the parent meets just one of seven different enumerated conditions for termination. K.S.A. 2023 Supp. 59-2136(h)(1). Here, the district court found that Father met three of those conditions permitting termination of his parental rights: (1) that Father abandoned or neglected E.R.K. after having knowledge of her birth under K.S.A. 2023 Supp. 59-2136(h)(1)(E); (2) that Father made no reasonable efforts to support or communicate with E.R.K. after having knowledge of her birth under K.S.A. 2023 Supp. 59-2136(h)(1)(C); and (3) that Father failed to assume the duties of a parent for two consecutive years immediately

5

preceding Stepfather's filing of the petition for adoption under K.S.A. 2023 Supp. 59-2136(h)(1)(G). Father alleges the district court erred because none of these findings are supported by clear and convincing evidence.

On appeal, this court reviews "all the evidence in the light most favorable to the prevailing party" to determine whether the district court's factual findings are supported by clear and convincing evidence. *In re Adoption of Baby Girl G.*, 311 Kan. 798, Syl. ¶ 3, 466 P.3d 1207 (2020). Under this review, the appellate court must determine whether "it is convinced a rational fact-finder could have found the determination to be highly probable." *In re Adoption of C.L.*, 308 Kan. 1268, Syl. ¶ 5, 427 P.3d 951 (2018). This standard does not require proof beyond a reasonable doubt, but the facts must support the conclusion by more than a preponderance of the evidence. "Clear and convincing evidence is an intermediate standard of proof . . . applie[d] when particularly important individual interests or rights are at stake," like the rights of parents to the care, custody, and control of their child. 308 Kan. 1268, Syl. ¶ 4. In conducting this review, the appellate court does not reweigh conflicting evidence or make credibility determinations but simply looks at the facts as presented to the district court. *In re Adoption of Baby Girl G.*, 311 Kan. 798, Syl. ¶ 3.

Parents who assume their parental responsibilities have fundamental due process rights protected by the United States and Kansas Constitutions to raise their child. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1060, 190 P.3d 245 (2008). "A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental and safely guarded liberty interest protected by the Fourteenth Amendment to the United States Constitution. This principle is beyond dispute." *In re P.R.*, 312 Kan. 767, Syl. ¶ 3, 480 P.3d 778 (2021); *In re A.S.*, 319 Kan. 396, 403, 555 P.3d 732 (2024). Therefore, in cases such as this where a stepparent seeks to adopt a stepchild, the parents must consent to such adoption unless one of the criteria permitting adoption without consent is met. K.S.A. 2023 Supp. 59-2136(h)(1); see also *In re Adoption of G.L.V.*, 286 Kan. at 1063. In

6

such circumstances, the "[a]doption statutes are strictly construed in favor of maintaining the natural parents' rights." *In re Adoption of C.L.*, 308 Kan. 1268, Syl. ¶ 2. However, even when strictly construing the adoption statutes, when a parent has failed to assume their parental duties, that parent's consent to the stepparent adoption is not required. 308 Kan. at 1279-80.

TERMINATION OF FATHER'S PARENTAL RIGHTS TO E.R.K.

Stepfather, as the party seeking to adopt E.R.K. without Father's consent, has the burden of proving by clear and convincing evidence that Father met one of the conditions enumerated in K.S.A. 2023 Supp. 59-2136(h)(1) and thus that it was appropriate to terminate his parental rights. *In re Adoption of C.S.*, 57 Kan. App. 2d 352, Syl. ¶ 4, 452 P.3d 858 (2019). Although the district court found that Father met three of those conditions, a finding as to just one condition is sufficient to support its conclusion. Thus, if this court finds the requisite support for the district court's finding that Father "failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of this petition pursuant to K.S.A. 59-2136(h)(1)(G)," then Father's appeal is unavailing.

While Father had some contact with E.R.K. between April 2021 to April 2023, the district court found that contact insufficient to demonstrate assumption of parental duties. Father argues the district court erred in minimizing his involvement. He claims that although he was "unable to be involved in day-to-day decision making for E.R.K." because he resided out of state, he "pursued options and opportunities which were available to him" to be there for E.R.K. in the following ways:

- "Attempted to contact E.R.K. an average of once per month during 2021 and 2022;"

7

- "Attempted to coordinate in-person contact with E.R.K. via email with Mother;"
- "Provided gifts for Christmas at least 'the last couple years';"
- "Provided birthday gifts;"
- "Sent checks as gifts for E.R.K. in 2021 and 2022, as well as years prior;"
- "Provided other gifts such as a tooth fairy card, flowers, a teddy bear, a red ukelele, a robot dog, and a Nintendo switch."

Father contends that his attempted monthly phone calls and occasional gifts were sufficient for forming a substantial emotional connection with E.R.K.

When determining whether a parent has assumed their parental duties, "there are numerous duties associated with being a parent to a child and all such duties may be considered in the context of all surrounding circumstances." *In re Adoption of J.M.D.*, 293 Kan. 153, Syl. ¶ 2, 260 P.3d 1196 (2011). The issue here is simply whether this court is convinced, after viewing all the evidence in the most favorable light to Stepfather, that a rational factfinder could have found it highly probable that Father failed to assume his parental duties for the two years before Stepfather's adoption petition. K.S.A. 2023 Supp. 59-2136(h)(1)(G); *In re Adoption of C.L.,* 308 Kan. at 1284.

While the statute does not contain a comprehensive list of what constitutes parental duties, it contemplates those duties include some type of financial and/or non-financial support. Before the enactment of the current statutory scheme, courts often considered a two-sided ledger of parental duties with financial support on one side and "love and affection" on the other. See, e.g., *In re J.M.D.*, 293 Kan. at 164-67. The Kansas Supreme Court explained that the statutory language related to the assumption of parental duties, "recognizes that there are numerous duties associated with being a parent to a child, and all such duties—even though not explicitly enumerated—may be considered."

*In re Adoption of G.L.V.*, 286 Kan. at 1054. We have focused primarily on two very basic and important duties of parents—love and affection on one hand and financial support on the other—in the context of stepparent adoptions because these duties are contemplated by the statute. In addition, these two important duties—which have formed the basis for the two-sided ledger approach—are capable of being measured and documented, whereas other parental duties may be less tangible. However, under the current statutory scheme, the Kansas Supreme Court concluded that it must "put to rest the artificial constraints of the two-sided ledger approach" and instead consider "all surrounding circumstances" when determining whether a parent has assumed their parental duties. *In re J.M.D.*, 293 Kan. at 167. This requires the court to consider the unique circumstances of each case to determine whether a parent has assumed their parental duties.

While it is important to not limit the types of actions that may demonstrate the assumption of parental duties, it can be helpful to identify some examples—particularly when considering a failure to assume parental duties for an older child. This court's knowledge and experience reveals that, in addition to financial support, parental duties may include—but are not limited to—love and affection; regular visitation or custody; involvement in the child's education, extracurricular activities, religious activities, and healthcare; communication with the child's other parent or guardian about the child as necessary and appropriate; and regular communication with the child. A parent's assumption of parental duties requires some level of support, knowledge, attendance, decision-making, or responsibility. Considering all the surrounding circumstances, a parent need not excel at or even undertake every aspect of parenting to demonstrate assumption of their parental duties. See K.S.A. 2023 Supp. 59-2136(h)(2)(A) ("In making a finding whether parental rights shall be terminated under this subsection, the court . . . [s]hall consider all of the relevant surrounding circumstances."); see also *In re J.M.D.*, 293 Kan. at 167-68 (explaining the court's need to review all surrounding circumstances, including financial support, to determine whether a parent has assumed their parental duties). However, when considering whether a parent has assumed their parental duties,

9

the court "may disregard incidental visitations, contacts, communications or contributions." K.S.A. 2023 Supp. 59-2136(h)(2)(B).

Viewing the evidence in the most favorable light to Stepfather, the record is replete with clear and convincing evidence upon which a rational factfinder could have relied to find it highly probable that Father failed or refused to assume the duties of a parent for two consecutive years immediately preceding Stepfather's adoption petition. First, even without being physically present in E.R.K.'s life, Father could have assumed one parental duty by providing her with financial support. Financial support is so paramount to the assumption of parental duties that when a court order exists requiring a financially able parent to make regular payments, the failure to do so for a period of two years immediately preceding the filing of the adoption petition creates a rebuttable presumption that the parent has failed or refused to assume their parental duties. K.S.A. 2023 Supp. 59-2136(h)(3). Here, this rebuttable presumption was not met because Father was not court ordered to make regular payments for E.R.K.'s support. But even without court ordered support, the court still considers a parent's provision of financial support when determining whether the parent has assumed their parental duties. See *In re Adoption of J.M.D.*, 293 Kan. at 173 ("[E]ven if the statutory presumption is not in effect, a parent still has a duty to support his or her child to the extent to which the parent is financially able."); see also K.S.A. 2023 Supp. 59-2136(h)(1)(C), (D), (h)(4) (permitting termination of parental rights when a parent made "no reasonable efforts to support or communicate with the child . . ." or if the father "failed without reasonable cause to provide support for the mother during the six months prior to the child's birth," with "support" meaning "monetary or non-monetary assistance that is reflected in specific and significant acts and sustained over the applicable period"). Sustained monetary assistance—when the parent is able—is an important parental duty.

Parents can provide financial support for a child in many ways, such as through regular payments to the child's other parent or guardian; providing for the child's needs

while in the parent's care; or paying directly toward the child's school, healthcare, sports, clothing, food, or other extracurricular activity expenses. In the two years preceding Stepfather's adoption petition, Father provided zero monetary support for E.R.K. despite his stipulation of being financially able to contribute. While Father contends he sent gifts, there is nothing indicating those were regular or of a nature and amount to constitute monetary assistance toward E.R.K.'s expenses. Even without a court order requiring support, a parent can demonstrate some assumption of parental duties by providing financial support for their child. See *In re Adoption of G.L.V.*, 286 Kan. 1034, Syl. ¶ 10 ("If a nonconsenting parent in a stepparent adoption has provided regular and substantial affection *or financial support* for his or her child, that parent has assumed the duties of a parent toward the child." [Emphasis added.]). Therefore, the failure to provide such support provides some evidence of a failure to assume parental duties. See *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 906, 189 P.3d 1157 (2008) ("Parents have a common-law duty to support their minor children, regardless of any statute imposing such an obligation.").

Second, Father stipulated in the district court—and does not dispute on appeal—that he did not see E.R.K. in person for more than two years before Stepfather's adoption petition. Lack of consistent, regular physical contact can inhibit a parent's ability to perform their parental duties. While this court understands that Father's physical distance from E.R.K. while living and working in Nevada makes in-person contact more difficult, it does not make such visits impossible. Under certain circumstances such as work obligations, military deployments, or medical/health considerations, a parent's physical absence can be unavoidable. That is not what occurred here.

There is no evidence of Father even attempting to be physically present with E.R.K. in the two years preceding Stepfather's petition. Since September 2015, the only in-person visit between Father and E.R.K. occurred in May 2023—after Stepfather filed the adoption petition initiating these proceedings—when Father contacted Mother via

11

email and Mother facilitated the visit. Father argues that Mother made it more difficult for him to maintain a relationship with E.R.K. and tried to impede his efforts. But there is no evidence of Mother thwarting Father's attempts to visit E.R.K. in the two years preceding Stepfather's adoption petition. In fact, Father stipulated that before his petition in this case, he "had not requested any visitation or [physical] parenting time with [E.R.K.] since September 2015." Mother cannot be blamed for impeding visits that Father never requested. While the distance between their homes was great, Father could have regularly—even if infrequently such as during holiday or extended school breaks—traveled to see E.R.K., requested in-person visits to his home or a location midway between his and Mother's homes, or sought court orders for any of these options.

Third, Father failed to maintain consistent, meaningful nonphysical contact or communication with or about E.R.K. in the two years preceding Stepfather's adoption petition. A parent living in a different city or state from their child's primary residence can perform their parental duties through regular, consistent, meaningful contact and communication. This contact could include emails, telephone calls, video calls, and texts with their child and the child's school, healthcare providers, religious leaders, and person with whom the child primarily resides. Parents who are not physically present can still remotely participate in doctor's appointments and healthcare decisions, attend parent-teacher conferences, communicate with educators, help their child with homework, and remotely participate in significant milestones. Stepfather presented clear and convincing evidence that Father failed to perform these types of parenting duties in the two years preceding his adoption petition.

The trial testimony demonstrated that Father called or attempted to call E.R.K. about 16 times in 2021—and some of these calls did not connect. Father claims that during the relevant timeframe from April 2021 to April 2023, he attempted to contact E.R.K. an average of once per month. Father does not claim he spoke with E.R.K. every month, just merely that he attempted to contact her on those occasions. Even if Father

12

had talked to E.R.K. each time he tried to call, under the circumstances here that alone would be insufficient to demonstrate assumption of parental duties—notwithstanding his claim that Mother failed to facilitate some of those attempted calls.

Finally, Father failed to be involved in E.R.K.'s life such as being involved in her healthcare, religious activities, education, or extracurricular activities during the two years preceding Stepfather's adoption petition. Father blames Mother for his lack of involvement and claims Mother made it difficult for him by delaying or refusing to respond to his inquiries or requests. He specifically testified to a delay in obtaining information about ordering E.R.K.'s school pictures and Mother failing to tell him the school E.R.K. attended. While it is imperative that a custodial parent does not undermine the noncustodial parent's efforts to assume parental duties, Father's intermittent information requests do not demonstrate an effort to assume parental duties. There is no record of Father regularly inquiring about school or other activities, asking to attend events, or attempting to participate in activities. Moreover, since 2017, Father made no effort through the legal process to change the custody order, require physical visitation, require telephonic communication, or otherwise be involved in E.R.K.'s life. The record shows that Father was uninvolved in E.R.K.'s life for many years, and there is no evidence that Mother caused or significantly contributed to his lack of involvement.

Father argues his occasional phone calls and gifts to E.R.K. in the two years preceding Stepfather's adoption petition demonstrate that he assumed parental duties. But the district court correctly gave little weight to these actions as incidental. K.S.A. 2023 Supp. 59-2136(h)(2)(B) ("In making a finding whether parental rights shall be terminated under this subsection, the court . . . may disregard incidental visitations, contacts, communications or contributions."). While these occasional calls and gifts demonstrate that Father has love and affection for E.R.K., under these circumstances where E.R.K. is Father conceded he did not assume day-to-day parenting responsibility but blamed his physical distance from E.R.K.'s primary residence. This argument is unavailing. Father's

13

physical distance from E.R.K.'s residence did not prevent him from assuming parental duties. Father could have petitioned the court for regular communication or visitation or, at the very least, requested such from Mother. Father's physical distance from E.R.K.'s residence did not prevent him from calling regularly, being involved in E.R.K.'s life, or having some amount of physical visitation. While Father clearly has love and affection for E.R.K., that alone is insufficient to demonstrate assumption of parental duties in this case when E.R.K. was about 10 years old at the time of the adoption petition and had not seen her Father in-person since she was 3. Under these circumstances—where no health considerations or limitations on telephone access prevented Father from making regular, consistent physical visits and telephone calls to E.R.K.—Father's attempted monthly phone calls and occasional gifts are just the type of incidental visits, contacts, communications, or contributions that should be disregarded when considering whether Father assumed his parental duties. K.S.A. 2023 Supp. 59-2136(h)(2)(B). Father's lackluster effort to be involved in E.R.K.'s life through occasional phone calls and gifts does not demonstrate assumption of parental duties when he has failed to provide financial support, failed to maintain regular contact or communicate with E.R.K., refused to establish in-person visits, and there is no evidence of other involvement in the two years preceding the adoption petition.

CONCLUSION

Viewing the evidence in the most favorable light to Stepfather, clear and convincing evidence supported the district court's factual finding that Father failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the adoption petition. That alone is sufficient to affirm the district court's termination of Father's parental rights to E.R.K., and this court need not determine whether the district court's decision was also correct under different statutory provisions. See K.S.A. 2023 Supp. 59-2136(h)(1). The district court's termination of Father's parental rights to E.R.K. is accordingly affirmed.

14

Affirmed.