NOT DESIGNATED FOR PUBLICATION

No. 128,124

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of M.B. and A.B., Minor Children.

MEMORANDUM OPINION

Appeal from Clark District Court; SIDNEY R. THOMAS, judge. Submitted without oral argument. Opinion filed May 16, 2025. Affirmed.

*Valerie L. Moore*, of Lenexa, for appellant.

*Sunny A. Schroeder*, of Curtis E. Campbell, Chrtd., of Cimarron, for appellee.

Before HURST, P.J., MALONE and COBLE, JJ.

PER CURIAM: W.M. (Stepfather) filed a petition for the stepparent adoption of his two stepchildren a year after marrying their mother. In his petition, Stepfather claimed the children's natural father, D.B. (Father) had failed to assume his parental duties for two years immediately prior to the adoption petition and so his consent to the adoption was not required. Father did not appear for the hearing on the petition for stepparent adoption, and the district court entered a default judgment granting Stepfather's adoption without Father's consent and the termination of Father's parental rights. A few months later, Father filed a motion to set aside the decree of adoption. The district court, after holding a hearing on Father's motion, during which Father testified and the court heard additional testimony and other evidence on the merits of the adoption petition, denied Father's motion. Father now appeals the district court's decree of adoption entered without his consent terminating his parental rights to both children and the denial of his motion to set

1

aside decree of adoption. For the reasons articulated below, Father's claims of error fail, and we affirm the district court's decisions.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother were never married. Mother moved from Ashland, Kansas, to Texas, with Father in 2007. She became pregnant in 2009 with Matt (referenced by pseudonym), and the couple lived together until 2013, when she became pregnant with Ally (also referenced by pseudonym).

Father was not listed on Matt's birth certificate but signed an acknowledgment of paternity, and the State of Texas issued a child support order to Father for Matt in 2011. The order required Father to pay Mother child support of $218 a month plus $50 in monthly medical support beginning August 1, 2011, and to share 50% of the medical expenses that exceeded the $50 monthly medical support payment. The Texas court also ordered a parenting plan for Matt, allowing Father to have supervised visits every first, third, and fifth Saturday of each month for six months. In the event Father completed those six months of supervised visits, his parenting time would progress to unsupervised time on a more regular schedule. This apparently never occurred, as when the order was entered the parties resided together and did not follow the court's order.

Mother left the relationship in 2015 and moved back to Kansas with both children. Mother told Father and the paternal grandparents that they could meet halfway to see the children anytime. Mother met Stepfather in 2019, and they began living together with the children shortly thereafter. Mother and Stepfather married in 2022.

In May 2022, an acknowledgment of Father's paternity of Ally was filed in Texas and Father's paternity was legally established for her; however, a formal custody order was never filed as to Ally. Father's child support obligation was modified to reflect his

2

support of both children, increasing his monthly payment to $273 starting June 1, 2022, plus a $50 monthly medical support payment, bringing his monthly obligation to $323.

Now residing in Kansas and married to Stepfather, in February 2023 Mother filed a series of petitions in Clark County, Kansas, under case No. 23-DM-03. These included a petition for paternity, petition to assume child custody jurisdiction in Clark County, petition to assume jurisdiction under the Uniform Interstate Family Support Act, and a motion to modify custody, parenting time, and support. Mother asked that jurisdiction over child custody matters would transfer to Kansas—the new home state of the children for the previous seven years—and to have sole custody of Matt and Ally and deny any parenting time for Father.

Father was personally served with the summons and petitions at an address on Stringer St. in Brenham, Texas, through a Texas constable. But the residential address listed in the summons was on Old Chappell Hill Road, Brenham, Texas, which was also the same address listed in the certificate of service in the notice of hearing. Father's counsel entered his appearance on the day of the hearing and was present for the hearings on the petitions. Father did not object to the transfer of jurisdiction to Kansas and the district court agreed to contact Texas to ask them to release jurisdiction over the child custody and child support matters involving Matt and Ally and allow transfer to Kansas. The Clark County district judge and the Texas district judge agreed that Kansas was the proper jurisdiction, and the Clark County district court ordered Kansas to assume jurisdiction in May 2023. Father later filed an answer to the petition for paternity, six months after the petition was filed without seeking leave to file the answer out of time, asking that Mother's petition be denied. He otherwise sought no other relief related to the petition.

In October 2023, Stepfather filed a petition for the adoption of his wife's two minor children in Clark County, Kansas, where they all resided, in Clark County District

Court case No. 23-AD-01. Mother consented to Stepfather adopting the children. At the time of the petition for stepparent adoption, Father was known to continue to reside in Texas.

Although the paternity proceeding remained pending, Stepfather claimed that Father's consent to adoption was not required because Father had failed to assume parental duties for two consecutive years preceding the filing of the petition. Stepfather's attorney filed a request for service, asking that the local sheriff in Texas serve Father by personal/residential service at an address on Old Chappell Hill Road in Brenham, Texas. The constable in Washington County, Texas, filed a return of service certifying that he personally delivered a copy of the petition for stepparent adoption and summons to Father on October 11, 2023.

A month later, Stepfather filed a motion for default judgment asserting that Father failed to answer the petition for stepparent adoption within the required time frame. The motion repeated the argument that Father's consent was unnecessary because he failed to assume parental duties for two consecutive years preceding the filing of the petition. The motion also included a notice of hearing, set for December 21, 2023, and a certificate of service showing the motion for default judgment and notice was sent to Father by mail. The district court issued an order of hearing, requiring Stepfather to provide notice of the hearing to Father by certified mail, return receipt requested, not later than 10 days prior to the hearing date. The proof of delivery from the United States Postal Service, filed with the district court, shows certified mail delivered to the same address on Old Chappell Hill Road in Brenham, Texas, on December 4, 2023, although the signature of the recipient is illegible.

Father did not appear for the hearing. During the hearing, the district court heard testimony from Mother and Stepfather, and Stepfather admitted additional evidence,

4

including child support documents, child support payment records from Texas, family pictures, and pictures of the children's baptism.

After hearing testimony by Mother and Stepfather, the district court took judicial notice of the paternity proceedings in Clark County, case No. 23-DM-03. Following its review of the evidence, the district court found Father's consent to the adoption was not required because he refused to assume the duties of a parent for two consecutive years preceding the filing of the petition. Additionally, the district court found that Father had "provided no or minimal financial or emotional support for the children for the past two years preceding the filing" of the petition. The district court determined adoption by Stepfather was in the best interests of the children and granted the petition for adoption, issuing a decree of adoption. The district court terminated Father's parental rights as part of the decree and granted name changes for Matt and Ally.

*Father's motion to set aside the stepparent adoption*

About three months after the granting of adoption, Father's attorney who had participated in the paternity action filed an entry of appearance in the adoption proceeding. Five months after the adoption was granted, Father filed a motion to set aside the decree of adoption alleging he was not properly notified. Father sought relief from the decree, claiming that he made child support payments within the last two years and that Stepfather's petition for adoption included false statements, among other issues. Father further argued that he was attempting to establish paternity through the Clark County proceedings and so the default judgment granting the adoption should be voided.

In response to Father's motion, Stepfather contended that Father was served at the constable's office in Texas, according to the Sheriff's Return, and the summons listed the correct address on record—the Old Chappell Hill Road address. Stepfather further reiterated that Father failed to assume parental duties because his infrequent child support

payments should be considered incidental by the court. A hearing on the motion to set aside the decree of adoption was set for two months later.

During the hearing on the motion to set aside decree of adoption, Father appeared with his counsel and testified regarding service of pleadings in both the paternity and the stepparent adoption cases. The district court also allowed him to testify regarding the merits of the adoption proceedings, and he was permitted to call witnesses—including his mother, the children's paternal grandmother—to support his claims related to his relationship with the children and child support issues. The court also permitted Stepfather to recall witnesses to again present his case for adoption, and both sides were allowed to cross-examine one another's witnesses.

At the conclusion of all testimony and after considering arguments from counsel, the district court announced its ruling and later issued a written journal entry which closely followed its oral ruling. The court again took judicial notice of the Clark County paternity proceedings, case No. 23-DM-03. Bearing in mind the evidence from both parties, the district court found the service on Father was executed properly on October 11, 2023, as shown by the Sheriff's Return. The district court based its findings on Father's testimony recalling being served at the constable's office—despite his testimony that he was confused about the service being for the paternity case, not for the adoption case—and because Father did not present any alternate address or rebuttal evidence why he could not receive notices at the Old Chappell Hill Road address. Additionally, the court found Father failed to provide Stepfather or the district court with any alternate address.

The district court determined Father was properly served and received proper notice of the final hearing over the petition for adoption, and found counsel for Father had not yet entered an appearance in the adoption case at the time the adoption petition

6

was heard. Along with other pertinent findings, the district court denied Father's motion to set aside the decree of adoption.

Father timely appeals.

THE DISTRICT COURT DID NOT ERR IN FINDING FATHER'S CONSENT UNNECESSARY TO GRANT THE STEPPARENT ADOPTION AND TERMINATING HIS PARENTAL RIGHTS UNDER K.S.A. 2024 SUPP. 59-2136(h)(1)(G)

Father argues that the district court erred because Stepfather failed to prove by clear and convincing evidence that Father failed to assume the duties of a parent and failed to pay a substantial portion of his child support obligation when financially able to pay it. He claims the district court's failure to make these findings amounted to an abuse of discretion and its decision must be reversed. Stepfather naturally disagrees.

*Applicable legal principles and standard of review*

In reviewing Father's arguments, we emphasize that both the United States' and Kansas Constitution's Due Process Clauses provide substantive protection for parents when they have assumed their parental duties. However, when a parent has not accepted some measure of responsibility for their child's future, the Constitution will not protect the parent's mere biological relationship with the child. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1060, 190 P.3d 245 (2008).

In Kansas, nonconsensual adoptions are generally disfavored. See 286 Kan. 1034, Syl. ¶ 6. Thus, adoption statutes are strictly interpreted in favor of maintaining the rights of the natural parents when terminating the parental rights of a natural parent. *In re Adoption of C.L.*, 308 Kan. 1268, 1279-80, 427 P.3d 951 (2018). But a district court retains the authority to terminate a person's parental rights in a contested adoption proceeding, if it finds by clear and convincing evidence that certain statutorily defined

7

grounds for termination exist. Important to note is that under K.S.A. 59-2136(h)(1) a district court may terminate a natural parent's rights, and find the parent's consent to adoption unnecessary, upon a finding by clear and convincing evidence of "'any'" of the factors contained in that section—that is, a finding of only one statutory factor is necessary to support termination. See *In re Adoption of C.S.*, 57 Kan. App. 2d 352, 366, 452 P.3d 858 (2019).

Relevant here, under K.S.A. 2024 Supp. 59-2136(h)(1)(G), a district court may terminate a parent's rights if the natural parent "has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition" for adoption. Also, under K.S.A. 2024 Supp. 59-2136(h)(3), a district court may presume a natural parent failed or refused to assume parental duties if the natural parent knowingly neglected to pay a substantial portion of child support when financially able to do so for two years after being judicially ordered to do so. The party seeking to terminate a parent's rights has the burden of proving by clear and convincing evidence that termination is appropriate under K.S.A. 2024 Supp. 59-2136(h)(1). See *In re Adoption of C.L.*, 308 Kan. at 1278.

When a district court terminates parental rights based on factual findings made under K.S.A. 2024 Supp. 59-2136(h)(1), those factual findings will be reviewed on appeal to determine whether, after viewing all of the evidence in the light most favorable to the prevailing party, the findings were supported by clear and convincing evidence. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020). That is, we must determine whether we are "convinced a rational fact-finder could have found the determination to be highly probable." *In re Adoption of C.L.*, 308 Kan. 1268, Syl. ¶ 5. When determining whether factual findings are supported by clear and convincing evidence, an appellate court does not weigh conflicting evidence, pass on the witnesses' credibility, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. at 806.

*The district court's decision was supported by clear and convincing evidence.*

Father dissects his arguments into three categories of items he claims Stepfather failed to prove: (1) that he did not pay a substantial portion of the child support obligation, (2) that Father was financially *able* to pay the child support, or (3) that Father failed to assume the duties of a parent. We address Father's arguments in reverse, as Father's failure to assume the duties of a parent under K.S.A. 2024 Supp. 59-2136(h)(1)(G) generally subsumes his other claims.

Father denies that Stepfather met his burden to show by clear and convincing evidence that he failed to assume parental duties. But Father's only support for that argument is that he was engaged in the paternity action Mother filed in 2023 by hiring his own counsel, agreeing to an order to transfer the case to Kansas for enforcement, and filing an answer in the paternity action. He contends the family was simply "operating informally" and that the substantial distance between the parents' homes made it difficult for parenting time to occur without considerable expense. For these reasons, he argues the court should consider his engagement in the parentage action in the two months leading up to the filing of the stepparent adoption action as evidence that he had not "'failed or refused'" to assume his duties as a parent, especially since the district court took judicial notice of the paternity case when deciding the adoption case. He argues that although the district court took judicial notice of the paternity case, it failed to give his participation in the case its necessary weight.

Testimony during both hearings—the one Father did not attend and the one he did—shows Father made little to no effort to visit or speak with either child during the two-year period before the filing of the petition for adoption. Father testified that the last time he saw the children was when he attended their first communion in 2022, where he watched the church service and then attended the meal and celebration afterward with other members of the family, but did not see the children privately. While Mother's

9

testimony supported that Father attended the ceremony, she said the event occurred in 2021 and he did not interact with the children much while he was there.

Father admitted that he had not requested parenting time since the petition for paternity was filed in February 2023, because he thought he had parenting time coming. But as Mother testified, Father had never asked and had never exercised any parenting time with Ally since their move to Kansas in 2015.

Mother testified that after she left Texas with the children in 2015, Father did not ask to see the children for two years, then he saw Matt in the summer of 2017. In 2018, Matt visited Father during Christmas, spring break, and during the summer. But Matt stayed at the paternal grandparents' home, not at Father's home, during these visits and spent little time with Father. In 2019, Matt stayed with Father and paternal grandparents during the summer, and again in 2020 in the summer and for Christmas. But the final time Matt stayed with Father was during the summer of 2021.

The record showed that while the paternal grandparents visited the children at least once a year, Father did not accompany his parents, and the grandparents appeared to be the driving force behind most contacts between Father and the children. According to Mother, Father barely had phone contact with the children, and the final phone call in August 2022 was with Matt only, because Ally refused to talk. Father accused Mother of blocking his number so he could not call the children, an accusation Mother denied and for which no evidence was presented. Paternal grandmother testified she could reach Mother or the children and occasionally let Father speak to the children during her phone calls.

Viewed in the light most favorable to Stepfather, as we are required to do, the evidence illustrates that the primary barrier to Father's contact with the children was his own lack of commitment. There appears to have been ample opportunities for Father to

10

accompany his parents when they visited the children, but Father failed to expend any reasonable effort to find ways to contact his children or find means to visit them. Despite his earlier sporadic visits with Matt, his only face-to-face contact with Matt in the two years before the filing of the adoption petition was for less than one day, in a group setting. And aside from that incidental contact, and other similar incidental contacts, he had not had visitation with Ally in approximately eight years preceding the filing of the stepparent adoption petition.

Two years is a considerable period, particularly in the life of a child, and the distance between homes here—from Texas to Kansas—is not so insurmountable that in-person visits are impossible at less than biennial intervals. Certainly, Father demonstrated as much by choosing to attend the children's first communion but inexplicably deciding not to attend countless other life events for over two years. With today's technological advancements, and the ease of video chats, there are more methods than ever to maintain a relationship over distance. Undoubtedly, there are countless more ways to demonstrate directly to your children an interest in parenting them than hiring an attorney to file an answer to a paternity petition. Although taking steps in a parentage case may sometimes be necessary to have access to parent children, mere involvement in a court case is not, standing alone, an action that equates to the "natural and moral duty to show affection, care, and interest" as has been our appellate courts' historical description of the love and affection expected of a parent. See *In re Adoption of J.M.D.*, 293 Kan. 153, 173, 260 P.3d 1196 (2011) ("The parental duty involved is to provide for and nurture the children's mental and emotional health."); *In re Adoption of G.L.V.*, 38 Kan. App. 2d 144, 148, 163 P.3d 334 (2007) ("[U]nder K.S.A. 59-2136[d], a parent's duties include both the duty of financial support and the natural and moral duty to show affection, care, and interest toward his or her child.").

Kansas law requires a parent to pursue "the opportunities and options which were available to carry out his duties to the best of his ability." *In re Adoption of Baby Boy W.*,

20 Kan. App. 2d 295, 299, 891 P.2d 457 (1994). Father's lack of efforts to connect with his children here, standing alone, teeter on the edge of sufficiency under K.S.A. 2024 Supp. 59-2136(h)(1)(G), to approve the stepparent adoption without his consent. But we need not decide the case on this failure alone, because the court also considered his inadequate financial support for the children.

Stepfather's petition presented Father's lack of financial support under the framework of the rebuttable presumption of unfitness of K.S.A. 2024 Supp. 59-2136(h)(3)—that Father knowingly failed to provide a substantial portion of the child support required by judicial order when financially able to do so, for a period of two years before the petition for adoption was filed, and so Father had failed to assume his parental duties. But the district court made no specific findings regarding the presumption. Instead, the court considered Father's provision of minimal financial support for the children over the past two years preceding the filing of the petition as further evidence in support of Father's failure to assume the duties of parenting.

On review of the record, the parties' briefs, and the exhibits, including records from the Texas Attorney General's Office, some of the numbers do not necessarily match up as to precisely what Father's current arrearage was at the time of the hearing and exactly how much he had paid throughout the life of the support orders. Regardless, the record demonstrates that as of the date of the hearings, Father had an unpaid child support balance somewhere between $4,000 and $6,000, and the entire year of 2022 went by without Father making a single child support payment. The evidence reveals that Father made only five child support payments in the entire two-year lookback period preceding the date of the filing of the adoption petition.

Mother also testified that Father provided no other financial support to the children. He provided no clothing for the children; he sent them no money for birthdays or other events; and he provided Mother with no reimbursement for their uninsured

12

medical bills. Despite Father's claim that he made payments to the Kansas Payment Center that were not reflected in the Texas Attorney General records, he offered no evidence to support these claims. Quite simply, Father offered no evidence to rebut Stepfather's evidence demonstrating that the only financial support Father provided the children were five payments in that two-year period. The district court was within its discretion to consider, under its totality of the circumstances analysis, that those 5 payments out of the 24 required payments were incidental. See K.S.A. 2024 Supp. 59-2136(h)(2)(A), (B) (providing the court is required to consider "all of the relevant surrounding circumstances" when considering whether to terminate parental rights under this statute, and may "disregard incidental visitations, contacts, communications or contributions"). After considering Mother and Stepfather's testimony and the exhibits presented, including the payment records from Texas, the court found Father failed to provide support of any substantial means, and that Father would fall behind in his child support and then only pay when it "be[came] very painful to him in other proceedings," such as being threatened with jail time.

Father argues that Stepfather produced no evidence of Father's payment history in Kansas and failed to show whether Father was even financially able to pay child support. Father now claims on appeal that his income in 2022 was akin to minimum wage and that there was no evidence that he made payments less than his financial capability at the time.

Stepfather points to Father's testimony that he was working and able to make a large lump-sum payment of support more than two years ago without his parents' help. Stepfather also argues that the monthly child support payment requirement was calculated by Texas authorities based on Father's monthly gross income of $1,257 in 2022. While it is true that there was minimal evidence regarding Father's income at certain points in time upon which the child support orders were based, there was no evidence offered before the district court at either hearing regarding Father's expenses.

13

For this reason, Stepfather is highly unlikely to have prevailed in his pursuit of the adoption based solely upon his request to invoke the rebuttable presumption of K.S.A. 2024 Supp. 59-2136(h)(3), as all conditions for the statutory presumption had not been met.

But as noted above, the district court did not rely on this presumption. Instead, it contemplated Father's "unfavorable child support payment performance as part of 'all of the surrounding circumstances,' even though all of the conditions for the statutory presumption ha[d] not been met." See *In re Adoption of J.M.D.*, 293 Kan. at 167. Much as our Supreme Court acknowledged was allowable in *In re Adoption of J.M.D.*, the district court reviewed Father's "no or minimal financial or emotional support for the children for the past two years preceding the filing of the Petition for Stepparent adoption" as part of its consideration of all the relevant facts around whether Father had assumed his parental duties. See 293 Kan. at 167.

When considered together, both Father's lack of contact with the children and his meager financial support in the two years preceding Stepfather's petition for adoption, viewed in the light most favorable to Stepfather, we find clear and convincing evidence supports the district court's findings. Father has failed to show how the district court ignored evidence or that its factual findings were unsupported. Viewing the record as a whole, we find the district court's decision that Father failed to assume parental duties for two years preceding the filing of Stepfather's petition under K.S.A. 2024 Supp. 59-2136(h)(1)(G) was supported by clear and convincing evidence. As a result, we find the district court did not err in granting Stepfather's adoption of the children without Father's consent and terminating Father's parental rights.

14

## THE DISTRICT COURT DID NOT ERR BY DENYING FATHER'S MOTION TO SET ASIDE THE DECREE OF ADOPTION

Father next argues that the district court abused its discretion by denying his motion to set aside the decree of adoption based on insufficient evidence. He contends the certificate of service was insufficient to prove he received proper notice and Stepfather failed to serve on Father's counsel the petition for stepparent adoption, even though Stepfather knew that Father was represented by counsel in the paternity action, which violated Father's right to due process.

*Applicable legal standards*

Appellate courts review the denial of a motion for relief from judgment filed pursuant to K.S.A. 60-260(b) under an abuse of discretion standard. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 937, 296 P.3d 1106 (2013); *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The district court's decision will not be disturbed unless no reasonable court would have reached the same result. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 701, 229 P.3d 1187 (2010). The party asserting the district court abused its discretion bears the burden of showing such an abuse. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

As for Father's constitutional claim, we note that the basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time, and in a meaningful manner. *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007); see U.S. Const. amend. XIV, § 1; Kan. Const. Bill of Rights, § 18.

*History of service of documents on Father*

After Mother filed the petition for paternity and related filings in February 2023 in case No. 23-DM-03, Father was personally served with the summons and petitions through a Texas constable, as evidenced by the Sheriff's Return filed in the district court. But the residential address listed on the summons was the address on Old Chappell Hill Road in Brenham, Texas—the same address contained in the certificate of service in the notice of hearing. Father's counsel entered his appearance in the paternity action on the day of the hearing and was present for the remainder of that action. At no point in the paternity case did Father notify Mother or her counsel that the Old Chappell Hill Road address was inaccurate.

Then, in October 2023, Stepfather filed his petition for stepparent adoption in the same district court, in case No. 23-AD-01. Stepfather's attorney filed a request for service, asking that the local sheriff in Texas again serve Father by personal/residential service at the Old Chappell Hill Road address—the same address used in the summons in the paternity action, and the address Father later admitted during testimony was his parents' longtime residence where he often received mail. The constable from Washington County, Texas, filed the Sheriff's Return certifying that he personally delivered a copy of the petition for stepparent adoption and summons to Father at another address at 11:14 a.m. on October 11, 2023.

Mother signed and filed a consent of spouse to the adoption of minor child by stepparent, which was also served by mail on Father to the Old Chappell Hill Road address on November 20, 2023.

A month later, Stepfather filed a motion for default judgment asserting that Father failed to answer the petition for stepparent adoption within the required time frame. The motion repeated the argument contained in the petition—that Father's consent was

16

unnecessary because he failed to assume parental duties for two consecutive years preceding the filing of the petition. The motion also included a notice of hearing, set for December 21, 2023, and a certificate of service showing the motion for default judgment and notice was sent to Father by mail at the same Old Chappell Hill Road address. The district court then issued an order for hearing, requiring Stepfather to provide notice of the hearing to Father by certified mail, return receipt requested, not later than 10 days prior to the hearing date. Proof of delivery from the United States Postal Service, filed with the district court, shows the certified mail delivered to the Old Chappell Hill Road address on December 4, 2023, although the electronic signature of the recipient who signed for delivery is illegible.

As described above, Father did not appear for the hearing during which the district court heard testimony from Mother and Stepfather and after considering the evidence, found Father's consent was not required, granted Stepfather's petition for adoption, and terminated Father's parental rights.

*Father moves to set aside stepparent adoption.*

Father moved to set aside the adoption, claiming in part that he was only "allegedly" notified of the earlier adoption proceeding. In response to Father's motion, Stepfather contended that Father was served at the constable's office in Texas, according to the Sheriff's Return, and the summons listed the correct address on record—the Old Chappell Hill Road address. Stepfather indicated that the constable was prepared to testify that he personally served Father at the constable's office, as evidenced by the Sheriff's Return, and again reiterated that Father failed to assume parental duties because his infrequent child support payments should be considered incidental by the court.

A hearing on the motion to set aside the decree of adoption was set for two months later.

*Father tells his side of the story.*

During the hearing on the motion to set aside the decree of adoption, Father testified on not only the issue of service but also on the merits of the adoption action. As for service, he said he recalled being served a petition for paternity, but he never received the petition for stepparent adoption. Father also stated that he never received a notice of hearing for default judgment. He assumed that all documents regarding his children's court cases, including the petition for stepparent adoption, would have been sent to his attorney's office because his attorney was hired in paternity matters. He claimed the signature on the return line of the certificate of service was not his, and that he lived with his boss at the time it was served in December 2023.

Father acknowledged that his parents resided at the Old Chappell Hill Road address, and that location has been his parent's residence for his entire life. He also recognized the address of the constable's office and clearly remembered that he was served his "first" case there. But when asked again, Father said that he was served the petition for paternity proceedings at the constable's office, not the petition for stepparent adoption.

Father denied receiving the notice of hearing through signed certified mail and testified he had received no certified mail in the past five years. When asked if he receives mail at his parent's residence, Father admitted that he occasionally has important mail delivered there. He knew Mother presumed he lived with his parents, but said he moved out of his parents' home about a year ago and did not give Mother his new address. He testified that he moved to Fayetteville, Texas, in October 2023, though neither Father nor his counsel provided a different address other than his parents' residence in the paternity case.

In addition to testifying about the service of the adoption petition, Father testified regarding his contact with the children and his payment of child support. He also called his mother, the children's paternal grandmother, to the witness stand to testify about her relationship with the children. Mother and Stepfather also testified again about the history of the parties' relationship, each person's relationship(s) with the children, and issues of support—essentially rehashing their prior testimony. Each also testified regarding Father's known, or unknown, address, and the issue of service.

At the conclusion of this hearing, the district court found the service of the adoption petition on Father was executed properly on October 11, 2023, as shown by the Sheriff's Return. The district court based this finding on Father's testimony of remembering being served at the constable's office, and because he presented no alternative address or rebuttal evidence why he could not receive notices at the Old Chappell Hill Road address. Additionally, the court found Father failed to provide Stepfather or the district court with any alternate address.

The district court found Father was also properly served and received proper notice of the final hearing over the petition for adoption, and found counsel for Father had not entered an appearance in the adoption case at the time the adoption petition was heard. The district court denied Father's motion to set aside the decree of adoption.

*The district court did not abuse its discretion, and Father received his day in court.*

On review of the record, there is no doubt that the district court inquired into the service of the petition for stepparent adoption and the notice of hearing for the default judgment. The judge expressed his deep concern regarding the notice to Father and his opportunity to be part of these critical proceedings. But after hearing testimony and evidence from both parties, the district court found that the notice of service of the petition for adoption, and service of the notice of hearing on the petition, were each

19

proper. And, ultimately, regardless of those service issues, Father received his day in court, as he was heard on the merits of the adoption petition during the hearing on his motion to set aside the adoption.

Father argues that Stepfather was required to present testimony or evidence from the constable to verify service occurred or testimony to demonstrate why service did not occur at the address contained on the summons. He complains that the district court ignored his testimony and his mother's testimony that they did not receive service, instead taking judicial notice of the court file. But what Father asks us to do is to reweigh the facts of the case—something the appellate court cannot do. Our review of whether the district court erred in its fact-finding is limited to determining whether substantial competent evidence supported the court's factual findings on which its exercise of discretion was based. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

Here, the district court found the court filings were accurate—that is, the Sheriff's Return and the certified return receipt from the United States Postal Service—and spoke for themselves, and Father's testimony did not contradict the filings that showed he received the service. It is a long established rule in Kansas that a return of service made by the sheriff in the record of a court of general jurisdiction is absolutely conclusive between the parties and cannot be disproved by extrinsic evidence. *Warren v. Wilner*, 61 Kan. 719, 721, 60 P. 745 (1900). So, the district court made no legal error by relying upon the court record. The testimony provided at the hearing supported the fact that the address provided was the best address for Father and that neither had it changed, nor had Father or anyone else provided an alternate address.

Father makes a conclusory argument that K.S.A. 2024 Supp. 60-205(b)(1), which requires that "[i]f a party is represented by an attorney, service under this section must be made on the attorney unless the court orders service on the party," supports the idea that Stepfather should have served his attorney from the paternity case with the stepparent

20

adoption petition. But this argument fails. Father offers no authority to support his claim that because he was represented by counsel in the previous paternity action, he should be assumed to be represented by the same lawyer in the adoption action. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Father argues the parties were the same—but they were not. Stepfather was the petitioner here, not Mother. And the petition for stepparent adoption was served on Father at the very same address and in the same manner as was the paternity action, for which he received service, retained an attorney, and responded. Taking all of this into consideration, substantial competent evidence supported the district court's findings.

As to Father's somewhat undeveloped complaint regarding a lack of due process, we find it unpersuasive. Regardless of the district court's decision on the propriety of service of the adoption petition and related notices, the district court provided Father the opportunity to be fully and substantively heard on the merits of the adoption petition during the hearing on his motion to set aside the adoption decree. Father was permitted to testify, to call his own witnesses, to cross-examine Stepfather's witnesses, and to present evidence. In all relevant respects, he was essentially permitted to relitigate the adoption petition and was given his day in court and thus provided procedural due process.

Accordingly, the district court did not abuse its discretion.

Affirmed.